498 So.2d 676 (1986)
In the Interest of G.D.H. and A.J.S., both children.
No. BL-446.
District Court of Appeal of Florida, First District.
December 12, 1986.
*677 Gail A. Adams, Jacksonville, for appellant.
Jim Smith, Atty. Gen. and James W. Sloan, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
Appellant, the mother, appeals the trial court's finding that her two children, G.D.H. and A.J.S., were legally dependent. We hold that there was insufficient evidence to support the trial court's finding of abuse and neglect under sections 39.01(2) and 39.01(27), Florida Statutes (1985), and reverse the trial court's determination of dependency. We further find that the trial court erred in its failure to state the facts supporting its finding of dependency in its order of adjudication as required by section 39.409(3), Florida Statutes (1985).
The series of events culminating in the trial court's finding of dependency began in September 1985, when HRS received an anonymous phone call suggesting that G.D.H. and A.J.S. were suffering from abuse and neglect. A social worker investigated the charges and filed petitions seeking to have both children declared dependents. On December 13, 1985, after a hearing, the trial court determined that both children were dependents and that they should remain in the care of their maternal grandparents.
The facts of this case do not support a finding of dependency based on abuse and neglect. Under section 39.408.(2)(b), Florida Statutes (1985), "[i]n a hearing on a petition in which it is alleged that the child is dependent, a preponderance of evidence will be required to establish the state of dependency." See also In the Interest of L.T., 464 So.2d 201 (Fla. 5th DCA 1985) (standard of proof in an initial adjudication of dependency requires proof by a preponderance of the evidence). The statutory definition of abuse is found in section 39.01(2), Florida Statutes (1985):
"Abuse" means any willful act that results in any physical, mental, or sexual injury that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired.
The state based its allegations of neglect primarily on the testimony of G.D.H. While G.D.H. did testify that her mother had on occasion spanked her by hand and with a belt and that these spankings sometimes bruised her, the mother's testimony indicated that she never punished G.D.H. without a reason. The mother cited as an example of this the fact that she sometimes punished G.D.H. for stealing money from her purse. Nothing in G.D.H.'s testimony suggests that these spankings "significantly impaired" her physical, mental or emotional health, and this is the statutory standard which section 39.01(2), Florida Statutes prescribes.
The state's allegations of neglect are similarly without merit. Under section 39.01(27), Florida Statutes (1985), neglect:
occurs when the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the person primarily responsible for the child's welfare deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment or permits *678 a child to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired. The foregoing circumstances shall not be considered neglect if caused primarily by financial inability unless services for relief have been offered and rejected.
Again, the controlling statutory standard for neglect is significant impairment of the child's physical, mental, or emotional health. Although there was testimony at the hearing that while the mother was at work during the summer she would not allow the children to leave their house, the mother submitted that the reason for her insistence that the children stay inside was to prevent them from fraternizing with other teenagers in the neighborhood who were significantly older than G.D.H. and A.J.S.
G.D.H. testified that she did not know where her mother worked and had no way of contacting her. However, the record reveals that the children did know that they were to call their grandmother in case of emergency. In addition, the mother testified that she called home every day. In sum, the state's allegations that the mother failed to call home are unsupported by the record and therefore cannot be construed to have significantly impaired her children's well-being, especially given the children's ability to contact their grandmother whenever it became necessary to do so.
The state also alleged that G.D.H. and A.J.S. were deprived of food, but the record discloses that the mother merely insisted that her children first get her permission before removing food from the refrigerator. In view of the fact that the mother was supporting two children on a single income, she may well have had little food to waste and hence considered it necessary to restrict her children's access to the refrigerator. The mother's financial situation may have also contributed to her electricity being turned off on one occasion. The record portrays a familial situation which, primarily because of the mother's low income, was less than optimal. Yet even if the record more convincingly demonstrated that the mother had neglected her children, section 39.01(27), Florida Statutes (1985), forbids a finding of neglect if the family's circumstances were "caused primarily by financial inability... ."
The trial court also erred in failing to briefly state the facts supporting its finding of dependency as required under section 39.409(3), Florida Statutes (1985):
If the court finds that the child named in a petition is dependent, but shall elect not to proceed under subsection (2), it shall incorporate that finding in an order of adjudication entered in the case, briefly stating the facts upon which the finding is made, and the court shall thereafter have full authority under this chapter to provide for the child as adjudicated.
The trial court's order, which permitted the maternal grandparents to retain continuing custody of G.D.H. and A.J.S., is strictly conclusive, stating only that the court found the mother's children to be dependent and that it was in the children's best interests to remain with their grandparents. The rationale behind the requirement that the trial court judge state the facts on which he bases his finding of dependency is to aid in appellate review of dependency orders. The need for such a statement of facts is particularly evident in cases such the one at bar, where the facts supporting a finding of dependency are less than compelling.
REVERSED.
SMITH and ZEHMER, JJ., concur.