597 So.2d 848 (1992)
In the Interest of S.M.B. and S.B., both children.
No. 91-2771.
District Court of Appeal of Florida, First District.
March 30, 1992.
Gerald S. Bettman, Jacksonville, for appellant.
John L. Sullivan, State, Dept. of Health and Rehabilitative Services, Jacksonville, for appellee State, Dept. of Health and Rehabilitative Services.
Elliot Zisser and Nancy N. Nowlis, Jacksonville, for appellee husband.
WEBSTER, Judge.
In this juvenile dependency case, appellant seeks review of the trial court's order of adjudication, which held that two of appellant's children are dependent children because they had been emotionally abused by appellant. Appellant advances two arguments: that the evidence presented to *849 the trial court was legally insufficient to support the order adjudicating the children dependent; and that the trial court erred reversibly when it denied repeated requests by appellant to permit the children to be examined and evaluated by a psychologist or a psychiatrist. Because we conclude that the trial court abused its discretion when it refused to permit the children to be examined and evaluated by a psychologist, psychiatrist or other qualified professional at appellant's request, we reverse.
Appellant is the natural mother of E.B., S.B. and S.M.B. Appellant and the children's natural father were divorced in 1988, at which time appellant was named the primary residential parent for all three children. In the fall of 1990, appellant's older daughter, E.B., who was then age fourteen, was hospitalized briefly for what was described at the adjudicatory hearing as either a suicide threat or a suicide attempt, and then moved in with her father and stepmother. (E.B. is involved only indirectly in this case.)
On May 15, 1991, the Department of Health and Rehabilitative Services (HRS) filed detention petitions alleging, in conclusory terms, that both S.B. (appellant's 13-year-old son) and S.M.B. (appellant's 11-year-old younger daughter) were believed to be dependent children who were "at risk" because each was "an alleged victim of neglect." Each detention petition also alleged that S.B. and S.M.B. had been removed by HRS from appellant's home and placed with their father, which placement HRS recommended continue. On the same day, after a detention hearing, the trial court entered orders finding that probable cause existed to believe that both children were dependent children; detaining both children with their father; and ordering that appellant be permitted only "supervised contact" with the children.[1]
Dependency petitions were filed as to both children on May 28, 1991. (An amended petition was filed later regarding S.M.B. However, the substantive allegations were not materially altered.) The substantive allegations of the petition regarding S.M.B. are as follows:
1. The child has been subjected to emotional abuse watching the mother [appellant] walk around their home in a nightgown with no underwear, exposing her genital area.
2. The child states that the mother constantly yells at her, curses frequently, "dumps" her problems on the child and pressures the child about prior sexual abuse by the maternal grandfather on a sibling, causing the child such emotional stress that the child's grades have dropped significantly.
The substantive allegations of the petition regarding S.B. are as follows:
1. The child has been subjected to emotional abuse watching the mother [appellant] walk around their home in a nightgown with no underwear, exposing her genital area.
2. The child's sibling, [S.M.B.], states that the mother constantly yells at her, curses frequently, "dumps" her problems on the child and pressures the child about prior sexual abuse by the maternal grandfather on a sibling, causing the child such emotional stress that the child's grades have dropped significantly.[2]
On May 31, 1991, appellant filed a motion requesting that all three children be examined and evaluated by Dr. Ernest C. Miller, a psychiatrist. The motion argued that S.B. and S.M.B. were both alleged to be dependent children as the result of emotional abuse by appellant, thereby placing in controversy the mental or emotional health of the two children. The motion argued, further, that an understanding of E.B.'s mental condition and its effect on her two siblings was critical to a proper perspective of the overall family situation.
At a pretrial hearing held on June 7, 1991, appellant's counsel told the trial court *850 that the motion for an examination and evaluation of the children was made pursuant to Rule 1.360, Florida Rules of Civil Procedure. Counsel argued that it was clear from the petitions that the children's mental condition was in controversy; and that the motion sufficiently demonstrated good cause for the examination and evaluation. Counsel for HRS, the father and the guardian ad litem all argued that the motion should be denied because the children's mental condition was not in controversy, and because the children were already "under the care of a competent psychologist." The trial court "reserved ruling" on the motion, saying, "I think the first thing that would need to happen is that you need to get the available information of the therapist of the children, and then possibly I would need to hear from experts if you still feel an additional evaluation would be necessary."
A second pretrial hearing was held on June 19, 1991. Counsel for appellant renewed his request that the trial court permit the children to be examined and evaluated. The trial court responded as follows:
Well, I think we are pretty much in a position where we were last time because I think the bottom line came down that I felt that you need to develop what information was available from specialists and then determine if additional psychological or psychiatric examination would be appropriate but, you know, for the Court to order, I don't take it lightly when I order a psychological and psychiatric evaluation. I think it does require good cause and particularly when there ha[s] been some evaluation. .. . So, I will continue to reserve the ruling on the motion so it would be pending... .
The trial court then set an adjudicatory hearing for July 19, 1991.
On July 17, 1991, counsel for appellant filed another motion requesting that the trial court permit Dr. Miller to examine and to evaluate the children. In this motion, counsel pointed out that the original motion had been taken under advisement, and never ruled upon. The motion also represented that "[i]t is important that the children be examined ... in order for the natural mother to properly appreciate and/or defend the issues in this cause." The motion requested that the adjudicatory hearing be continued until the children could be examined and evaluated.
At the commencement of the adjudicatory hearing on July 19, 1991, counsel for appellant told the trial court that he could not defend against the allegations made in the petitions without the assistance of a psychologist or a psychiatrist who had examined and evaluated the children. He also pointed out that he could not intelligently cross-examine the "expert" HRS intended to call without the assistance and advice of an "expert" of his own. Counsel for HRS, the father and the guardian ad litem represented to the trial court that Roger B. Szuch, HRS's "expert," was of the opinion that it would be detrimental to the children to require them to submit to a further examination and evaluation. Once again, the trial court declined to rule on the motion, saying:
Well, I frankly believe that I'll be in a much better position once I hear other testimony to determine whether or not there should be an additional evaluation. I'm going to continue to reserve ruling rather than denying it... . And then I'll make a decision after I hear the testimony.
The trial court then proceeded with the adjudicatory hearing.
Four witnesses testified at the adjudicatory hearing: S.B., S.M.B., Roger B. Szuch and Robert Chapman. The only individual even arguably qualified to express opinions regarding the mental or emotional states of the two children was Szuch.[3] *851 Szuch held a master's degree in psychology and social work, and was a licensed clinical social worker and marriage and family therapist in Florida. He testified that he was experienced in marital and family therapy and in working with emotionally disturbed teenagers; and that he dealt with some frequency with "emotionally abusivetype situations."
According to Szuch, in December 1990, he had been asked by a psychiatrist retained by E.B.'s father to begin family therapy with E.B. and her father and stepmother, and to involve S.B. and S.M.B. in the process, to the extent possible. Szuch said that S.B. and S.M.B. had been involved in fifteen family sessions since December 1990. Szuch testified at considerable length about what S.B. and S.M.B. had told him regarding appellant, appellant's conduct toward them and how the children felt toward appellant. He also rendered opinions regarding whether what the children had told him the appellant's conduct had been was abusive; and testified that the children felt that they had been emotionally abused, that requiring the children to live with appellant would be detrimental to their emotional well-being and that any unsupervised visitation by appellant also would be detrimental.
At the conclusion of Szuch's testimony, the following colloquy took place between the trial court and appellant's counsel:
[COUNSEL]: Your Honor, at this time I'd ask for a ruling on my motion... .
[COURT]: Based upon the testimony of the children's therapist that it would be, to establish a new relationship with another therapist by the children, would not be in the best interest of the children. It would be detrimental to change therapists for them at this time. I would deny your motion.
[COUNSEL]: I'm not asking for the children's therapist. I'm asking for an expert witness so we can have more knowledge about what happened.
[COURT]: Deny your motion... .
Counsel for appellant again renewed his request at the conclusion of all the testimony. The trial court again denied the request.
On August 19, 1991, the trial court entered its order of adjudication, in which it found that appellant had emotionally abused the two children by continuing to wear "inappropriate dress" in the presence of S.B. after S.B. had told appellant that this upset him; and by "yelling at the children, and cursing their father and older sister" on repeated occasions. The trial court adjudicated both children dependent children. Later, the trial court entered a disposition order continuing the placement of both children with their father, and ordering that appellant was to "have no contact with the children until all therapists approve and delineate the nature of the contact."
We recognize that "the trial court possesses broad discretion in granting or refusing discovery motions and also in protecting the parties against possible abuse of discovery procedures, and only an abuse of this discretion will constitute fatal error." Eyster v. Eyster, 503 So.2d 340, 343 (Fla. 1st DCA), review denied, 513 So.2d 1061 (Fla. 1987). We recognize, further, that the abuse of discretion standard applies also to requests, such as that made here, for a physical or mental examination. Motor Union (Aviation) Orion Ins. Co. v. Levenson, 153 So.2d 852 (Fla. 3d DCA 1963). Clearly, the trial court's decision to deny appellant's motion for a psychological or psychiatric examination and evaluation was motivated by concern for the well-being of the children. Nevertheless, on the facts of this case, we conclude that the trial court abused its discretion when it denied the motion as to S.B. and S.M.B.
*852 This case involves what has been recognized as a "fundamental liberty interest"  the right to raise one's children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599, 606 (1982); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-13, 31 L.Ed.2d 551, 558 (1972); Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565, 570 (Fla. 1991). In such cases, the courts must be particularly vigilant to ensure that a parent's rights, procedural and substantive, are not improperly restricted; while, at the same time, protecting children from harm.
In this case, the charges made in the petitions were based exclusively upon allegations that certain actions of appellant had resulted in emotional abuse to S.B. and S.M.B. Section 39.01(2), Florida Statutes (Supp. 1990), reads: "`Abuse' means any willful act that results in any physical, mental, or sexual injury that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." There are no allegations in either petition of any physical or sexual injury to either child. Therefore, in order to prove the allegations of its petitions, HRS (representing the state) was required to establish by the greater weight of the evidence [§ 39.408(2)(b), Fla. Stat. (Supp. 1990)] that (1) as the result of one or more willful acts by appellant, (2) the children suffered mental injury (3) that either caused or was likely to cause their emotional health to be significantly impaired. Clearly, HRS could not make out a prima facie case without testimony from a psychologist, psychiatrist or other qualified professional that the alleged acts of appellant had resulted in mental injury to the children; and that such injury either caused or was likely to cause the children's emotional health to be significantly impaired. To carry its burden, HRS relied upon Roger Szuch, a clinical social worker and marriage and family therapist originally retained, at least indirectly, by appellant's former husband.
Equally clearly, appellant could not hope to present a meaningful defense without her own "expert." By denying appellant's repeated requests for an examination and evaluation of the children, in essence, the trial court was depriving appellant of the opportunity to rebut the serious charges made against her. Had appellant been permitted to have the children examined by a qualified psychologist, psychiatrist or other professional, perhaps appellant could have presented an opinion contradictory to Szuch's by someone as competent as (or more competent than) Szuch. On the facts of this case, appellant should have been afforded that opportunity.[4]
Our discussion applies only to S.B. and S.M.B., whose mental or emotional conditions we conclude were clearly "in controversy"; and as to whom "good cause" has, likewise, clearly been established. See Fruh v. Department of Health and Rehabilitative Services, 430 So.2d 581, 584 (Fla. 5th DCA 1983) ("`In controversy' means that the party's condition is directly involved in some material element of the cause of action or defense ...; `[g]ood cause' means that the mental condition of the party, even though in controversy, could not adequately be evidenced without the assistance of expert medical testimony.") Appellant has not, at this point, established her entitlement to an examination and evaluation of E.B. However, we believe that the same test (i.e., that contained in Rule 1.360, Florida Rules of Civil Procedure) applies to E.B. because E.B. is in the "custody or legal control" of her father, who is a "party" to this proceeding. Therefore, on remand, should appellant persist in requesting that E.B. also be examined and evaluated, it will be appellant's burden to establish both that E.B.'s mental or emotional condition is "in controversy," and that there is "good cause" for the request.
*853 Based upon the foregoing, we reverse and remand for further proceedings consistent with this opinion. On remand, the trial court shall satisfy itself that the individual requested by appellant is professionally qualified to examine and to evaluate the mental and emotional conditions of the children. The trial court shall then enter an order specifying "the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made," as required by Rule 1.360(a)(1)(B), Florida Rules of Civil Procedure. See In the Interest of T.M.W., 553 So.2d 260 (Fla. 1st DCA 1989).
REVERSED and REMANDED, with directions.
MINER, J., concurs.
ZEHMER, J., concurs and dissents with written opinion.
ZEHMER, Judge (concurring and dissenting).
I fully concur with the majority opinion that the trial court erred in refusing to permit the children to be examined and evaluated by a professional expert witness at appellant's request, but I dissent as to the remand for further proceedings.
I conclude it is unnecessary to reach the point discussed in the majority opinion and would reverse the adjudication of dependency with directions to dismiss the petition because the evidence presented by the petitioner was legally insufficient to support a finding of dependency due to the lack of evidence of mental injury as required by section 39.408(2)(b), Florida Statutes (Supp. 1990). I do not read the testimony of Mr. Szuch, the only expert witness seemingly qualified to express an opinion on mental injury, as sufficient to establish that the children have suffered the kind and extent of mental injury that is contemplated by the statute.
NOTES
[1] The record indicates that appellant has been permitted no contact whatsoever with the children since May 15, 1991.
[2] The legal sufficiency of the petitions has not been challenged on appeal. Accordingly, we express no opinion on that matter.
[3] Robert Chapman testified that he was a case coordinator with the Child Protection Team; and that he possessed a master's degree in counseling. Although he candidly conceded that he had "very little experience in emotional abuse" and that he did not feel that he was "an expert in emotional abuse situations," at the request of HRS, and over objection by appellant's counsel, the trial court permitted Chapman to render "an opinion as to identifying abusive situations." Because the only issue framed by the petitions was whether the alleged actions of appellant constituted emotional abuse of the children, an issue as to which Chapman admitted he was unqualified, we believe that permitting Chapman to render opinions on that issue was both clearly erroneous and prejudicial to appellant. See generally Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla. 4th DCA 1991) (whether a witness possesses necessary expertise is within the sound discretion of the trial court and will be disturbed only when clearly erroneous and prejudicial to the adverse party).
[4] We note that, although the trial court based its denial of appellant's repeated requests for an examination and evaluation upon a finding that an examination and evaluation would be detrimental to the children, there is no evidence in the record to support such a finding. We are confident that any qualified professional would be sensitive to the children's emotional states, and would take care not to say or to do anything which might be harmful to the children.