763 So.2d 478 (2000)
F.R., as Parent of D.R., a Child, Appellant,
v.
DEPARTMENT OF CHILDREN & FAMILIES, Appellee.
No. 5D99-1278.
District Court of Appeal of Florida, Fifth District.
June 30, 2000.
Rehearing Denied August 7, 2000.
J. Shawn Hunter, Orlando, for Appellant.
*479 Chris L. Korn, Orlando, for Appellee.
THOMPSON, C.J.
F.R. ("Mother"), mother of the minor child, D.R., timely appeals the lower court's orders finding D.R. dependent by a preponderance of the evidence and withholding adjudication of dependency. This court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.030(b)(1)(A). D.R.'s father was a drug abuser and, in order to separate herself and D.R. from that lifestyle, the Mother had moved from her home in Orlando to Ohio in 1996. There she met A.Y. in December 1996. Pregnant with A.Y.'s child, the Mother moved back to Orlando in July 1997. A.Y. followed soon after and then A.R.Y., the Mother and A.Y.'s child, was born in September. The Mother returned to work in November after post-partum leave, leaving A.Y. to care for both D.R. and A.R.Y. While in A.Y.'s care, A.R.Y. suffered a severe brain injury and shortly thereafter died. The Department of Children and Families (DCF) filed its shelter/relative placement petition for both children before A.R.Y. died, and then modified the petition to only address D.R. upon A.R.Y .'s death. A petition for dependency was later filed and a case plan approved.
At the adjudicatory hearing on the petition for dependency, the DCF presented expert testimony that A.R.Y. had died from shaken baby syndrome.[1] An officer from the Orange County Sheriff's Office testified that the Mother had made multiple misstatements about the facts in order to mislead investigators, including lying about A.Y.'s whereabouts in the aftermath of these events, in order to conceal him from the authorities. The Mother presented testimony of a licensed psychologist who saw no reason to deny the Mother custody, and an expert who testified A.R.Y. did not die of shaken baby syndrome, but rather died of natural causes.
The trial judge announced his findings of fact, all of which were supported by the evidence, after closing argument from both sides and the guardian ad litem. The DCF asked for a finding of dependency; the Mother and the guardian did not. The trial judge found D.R. dependent based on proof that D.R.'s sibling was abused, but withheld adjudication. Although the court found D.R. dependent, the court placed the child with the Mother based on the recommendation of the guardian ad litem.
It is well-established at Florida law that a finding of neglect may be based upon proof of neglect or abuse of a sibling.[2]See C.F. v. Department of Health and Rehabilitative Services, 649 So.2d 295 (Fla. 1st DCA 1995); see generally Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565 (Fla.1991); In the Interest of M.T.T., 613 So.2d 575 (Fla. 1st DCA 1993). Under Chapter 39, a child may be found dependent in a number of circumstances. There are two provisions of Section 39.01 that apply to this case:
"Child who is found to be dependent" means a child who, pursuant to this chapter, is found by the court:

*480 (a) To have been abandoned, abused, or neglected by the child's parent or parents or legal custodians;
* * *
(f) To be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians.
§ 39.01(14)(a), (f), Fla.Stat. (1999).
Although the trial court found D.R. dependent, it should be noted that the court was cognizant of the Mother's ability to parent, as the court withheld adjudication and left D.R. in the care of the Mother. As Section 39.507(5), Florida Statutes (1999) explains in pertinent part:
If the court finds that the child named in the petition is dependent, but finds that no action other than supervision in the child's home is required, it may enter an order briefly stating the facts upon which its finding is based, but withholding an order of adjudication and placing the child's home under the supervision of the department.
The trial court handled the case after a lengthy adjudicatory hearing with conflicting evidence in the very way described by the statute. The trial court's measured response to this heartbreaking factual scenario is appropriate and does not present reversible error. It is not our function to reevaluate the testimony and evidence and substitute our judgment for that of the trial court as to the weight to be accorded the evidence. See, e.g., Paquin v. Department of Health and Rehabilitative Services, 561 So.2d 1286, 1287 (Fla. 5th DCA 1990). Accordingly, the order withholding adjudication of dependency is affirmed.
AFFIRMED.
W. SHARP, J., and ORFINGER, M., Senior Judge, concur.
NOTES
[1] In fact, A.Y. was convicted in the death of A.R.Y. and sentenced to life in prison with no possibility of parole.
[2] In Smith v. Department of Health and Rehabilitative Services, 665 So.2d 1153 (Fla. 5th DCA 1996), Judge Sharp explained that:

prospective abuse or neglect ... is clearly a sufficient basis for ... dependency adjudication provided at least two elements are established. First, abuse or neglect of another child must be clearly established.
* * *
The second element that must be established to prove prospective abuse or neglect is the parent's prognosis for improvement or rehabilitation and a high likelihood that his or her condition will result in the abuse or neglect of other children.
Smith, 665 So.2d at 1156-58 (Sharp, J., dissenting); see also Denson v. Department of Health and Rehabilitative Services, 661 So.2d 934 (Fla. 5th DCA 1995) (stating that where finding dependency based on proof of neglect or abuse of other children, the evidence must establish that the child is at substantial risk of suffering imminent abuse or neglect if left in custody of the parent).